Rahr and another vs. The Manchester Fire Assurance Co.

RAHR and another, Appellants, vs. THE MANCHESTER FIRE ASSURANCE COMPANY, Respondent.

*May 1 — May 22, 1896.*

*Insurance against fire: Agency: Appointment: Apparent authority: Court and jury: Special verdict.*

1. In an action on an insurance policy it was not error to take from the jury the question whether the person who issued the policy was in fact defendant's agent, where he admitted that he had never been made an agent and his whole evidence conclusively showed that he issued the policy depending on a probable ratification by defendant and on his probable early appointment as an agent, and especially as the contention that he was in fact an agent was practically abandoned on the trial and no exception was taken to an instruction that it was not claimed that he had actual authority to issue the policy.

2. A request by the defendant to the person who issued the policy that he collect the balance due from a former agent whose business he had purchased, or that he make up the latter's accounts from the books, or that he mail a canceled policy, did not give him apparent authority to issue policies.

3. Where the answers to certain questions of a special verdict disposed of all the material issues in defendant's favor, and there was no evidence to sustain the answers to the remaining questions in plaintiffs' favor, the latter were properly stricken out.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

This action is brought to recover $800 upon a policy of fire insurance alleged to have been issued by the defendant company, through its alleged agent, one Sterling, at Iron Mountain, in the state of Michigan. The policy was in form issued and delivered by Sterling May 24, 1894. The property insured was situated at the village of Sagola, about twenty miles from Iron Mountain, and it was totally destroyed by fire July 9, 1894. Due proofs of loss were made July 26, 1894. The questions litigated on the trial were: First, whether L. T. Sterling, the alleged agent of the de-

Rahr and another vs. The Manchester Fire Assurance Co.

fendant, who issued the policy, was in fact such agent; and, second, whether he had been held out to the public by the defendant, or with its knowledge, as an agent, so that the defendant would be bound by his acts.

The facts were not seriously in dispute. The proofs showed that one David Bergeron had been for some time in the insurance business at Iron Mountain, representing a number of companies, the defendant being one, and that he was supplied with the blanks usually sent to agents, such as a register and a record book, blank policies, blotters, cards, and blanks for daily reports. It appears that local agents had power to fill out policies and sign them. The defendant's agency at Iron Mountain was suspended February 7, 1894, on account of the depressed financial conditions then existing; Agent Bergeron then being indebted to the company in the sum of about $180. The defendant's books and blanks remained with Bergeron. Sterling was also a general insurance agent at Iron Mountain, and represented a number of companies. In April, 1894, Bergeron sold out his insurance business to Sterling. After this purchase, Sterling went to Chicago and saw Mr. French, the defendant's assistant manager, who had power to appoint agents, who, after a short conversation, referred him to A. S. Witherbee, the defendant's special agent at Milwaukee, who had power to appoint agents and transfer agencies in Michigan. Sterling saw Witherbee, who gave him a commission agreement and a bond for execution. Sterling claimed that during this conversation Witherbee requested him to get the books of the company from Bergeron, and render him an account of Bergeron's business; also to collect the balance due from Bergeron, if possible; and, if there were policies that ought to be canceled, to take them up and return them to the company. Witherbee testifies that he mentioned Bergeron's balance, and told Sterling if he could get that collected it would facilitate matters, but that until that balance had

Rahr and another vs. The Manchester Fire Assurance Co.

been closed they could not consider the appointment of any-
body at Iron Mountain; that he said nothing to Sterling
about getting up any old policies, and did not ask him to
take them up, but that he told him that, if there was any-
thing on their register which he knew was bad, the com-
pany would appreciate it if he would let him (Witherbee)
know, so that he could get them off. There is no evidence
which shows that Sterling was directed or authorized by
the defendant company to take the blank policies and other
supplies from Bergeron's office. Sterling himself does not
testify that he received any such authority, although he
says that he understood from his talk with Witherbee that
he was to take the supplies. This question and answer
were, however, stricken out by the court. After this con-
versation with Witherbee, Sterling returned to Iron Mount-
ain, went to Bergeron's office, and procured the books and
blanks of the defendant company from Bergeron.

A few days after this talk, Witherbee sent to Sterling the
following letter: " Chicago, April 16, 1894. *A. E. Wither-
bee, Special Agent, Pfister Hotel, Milwaukee, Wis.*— Dear Sir:
I inclose you herewith a communication from Iron Mount-
ain, in which Agent Bergeron advises us that he has sold
his agency to L. T. Sterling. Mr. Sterling called upon me
this morning, and seems to be a very good man. He will
be in Milwaukee to-morrow, and I have asked him to call
upon you at the Pfister. Please arrange for the transfer.
The balance due from Agent Bergeron is $178.75. Last
policy issued was 1,413,027. Yours very truly, C. B. FRENCH,
Assistant Manager." Indorsed by Witherbee at the bottom
of this letter was the following memorandum: " *This letter
explains itself.* Kindly collect this balance, and I will *ap-
point you with full authority to write such business as your
companies are writing.* Yours truly, A. S. WITHERBEE."
On or about the 24th of April, Sterling received from French
the following letter in reply to one which he had previously

sent French: "Chicago, April 23, 1894. *Mr. L. T. Sterling, Iron Mountain, Mich.*— Dear Sir: In reply to your favor of the 21st, the statement of D. Bergeron's account, showing balance due the company, $111.80, will be correct upon our receiving canceled policies 1,313,744 and '722, which I will thank you to have forwarded as early as possible. Yours very truly, C. B. FRENCH, Asst. Manager." There is testimony tending to show that Sterling forwarded the two canceled policies referred to in the last letter. Sterling also made considerable efforts to induce Bergeron to remit to the defendant the balance of his indebtedness, and succeeded in getting him to send all but $40.

After receiving the memorandum from Witherbee, indorsed upon the letter from French, Sterling wrote nine policies for the defendant company, including the policy in question, and sent in to the company at Chicago reports of all these risks except the risk of plaintiffs. Just when these reports were mailed from Iron Mountain does not appear, but they appear to have all been received at one time at the Chicago office, and the date of the reception appears to be the 29th of May, 1894. The plaintiffs' policy, upon which this action is brought, was issued May 24th, but it appears by Sterling's evidence that the report of the issuance of that policy was mislaid in his office, and did not come to his knowledge until two or three days after the fire, when he found it among his files, and took it personally to Chicago, and showed it to French.

As before stated, the plaintiffs' policy was issued May 24th, and mailed by Sterling to the plaintiffs, who lived at Green Bay. The policy was ordered by letter, and it does not appear that the plaintiffs, or either of them, were ever in Sterling's office, or knew of his possession of the books and blanks of the defendant company. On the same day that the policy was issued, Sterling sent to the defendant company his agency bond, and he testifies that he after-

wards received a communication approving the bond, but he never received his commission. On the 8th of June, Sterling received from Manager French a communication dated June 7th, in which he was directed to cancel all the policies of the company on which he had sent in reports aforesaid. In this letter French gives the following reasons for this cancellation: "We beg to say in this connection that we cannot recognize these policies, as you have no commission to accept or write business for this company, and we are at a loss to know by what authority the company *has been bound* on the above policies." As requested in this letter, Sterling at once canceled the policies.

At the close of the trial the jury returned the following special verdict: "(1) Was L. T. Sterling the agent of said defendant on May 24, 1894, with authority from said defendant to issue the policy in question? *Answer.* No (by direction of court). (2) Did the defendant know that said Sterling had in his possession *blank policies*, records, and other things furnished by said defendant to its agents, prior to May 24, 1894? *A.* No. (3) If the second question is answered 'No,' then answer this: Was the defendant negligent in not ascertaining that said Sterling had in his possession said blank policies and other things mentioned in the second question? *A.* No. (4) Was said Sterling clothed by said defendant with apparent authority to issue policies for said company on May 24, 1894? *A.* Yes. (5) Did said plaintiffs accept, retain, and rely upon said policy, relying on said Sterling's apparent authority to issue it for said defendant? *A.* Yes."

Upon this verdict the plaintiffs moved for judgment, which motion being overruled they made a motion to set aside the verdict and for a new trial. The defendant moved to set aside the fourth and fifth findings in the special verdict, and for judgment upon the verdict for the defendant. The plaintiffs' motions were overruled, and the defendant's

motion granted, and judgment entered for the defendant, from which the plaintiffs appeal.

For the appellants there was a brief by *Greene, Vroman & Fairchild*, and oral argument by *H. O. Fairchild.*

For the respondent there was a brief by *Geo. S. Steere,* attorney, and *P. H. Martin* and *E. C. Fitch*, of counsel, and oral argument by *Mr. Steere.*

WINSLOW, J. The only questions seriously litigated in the case were: (1) Whether Sterling was in fact the defendant's agent. (2) If not, whether he had been held out as such, so that the defendant would be bound by his acts because he was apparently such agent.

The first question was answered by the court in the negative, and the question now is whether the court was justified in so doing. From the foregoing statement of facts we think it very clear that the court was right. Examination of the evidence fails to show that either French or Witherbee ever in fact constituted Sterling the agent of the company. Sterling himself does not claim it. He is forced to admit, substantially, that he was never made an agent, but that he thought he would be such agent. His whole evidence conclusively shows that he issued the policies depending on a probable ratification by the company, and on his probable early appointment as agent, rather than upon the fact that he was in fact agent. In fact the contention that Sterling was in fact an agent of the company was abandoned by the plaintiffs on the trial. This appears from a conversation between plaintiffs' counsel and the court during the trial. The defendant was offering testimony as to a conversation between Sterling and French after the fire, to which the plaintiffs' counsel objected as immaterial. Thereupon the court said, "If you concede that, as between the company and Mr. Sterling, he was not their agent, why then it is not material; if you don't, it is material." To

this plaintiffs' counsel replied: "Well, I don't know but I would concede that; probably will. It wouldn't make any difference. *That is not a question in the case.*" If this question was not a question in the case, it could only be because the plaintiffs had abandoned their claim that he was in fact an agent. Furthermore, it appears that the court instructed the jury that it was not claimed by plaintiffs' counsel, really, that Sterling had actual authority to issue the policy in suit. To this instruction no exception was taken. Manifestly, the plaintiffs had abandoned their contention of actual authority because there was no testimony to base it on, and the court was right in taking the question from the jury.

As to the second question in the case, namely, that of apparent authority, it could not be contended on any testimony in the case that either Witherbee or French had ever authorized Sterling to obtain the blank policies and other supplies, so the only question on this branch of the case was whether the company knew of Sterling's possession of these supplies at the time of the issuance of plaintiffs' policy, or was negligently ignorant of that fact. These questions were fairly submitted to the jury, and answered in the negative. There was no other ground upon which apparent authority could be claimed. A request to collect the former agent's balance, or to make up his accounts from the books, or to mail a canceled policy, would furnish no ground for a claim of apparent authority to issue policies.

Thus it is clear that when the first three questions of the special verdict were answered all the material questions in the case were disposed of; and when those questions were all answered in the negative there was no ground left on which the plaintiffs could recover. The remaining questions seem to have been mere surplusage, and there was no evidence left in the case upon which affirmative answers to them could rest. The court was right in striking them out.

*By the Court.*— Judgment affirmed.